614 So.2d 180 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
John Leon MORRIS, Defendant-Appellant.
No. CR 92-574.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1993.
Guy R. Smith, Leesville, for defendant-appellant.
*181 Mark Kramar, Asst. Dist. Atty., Leesville, for plaintiff-appellee.
Before LABORDE, THIBODEAUX and WOODARD, JJ.
THIBODEAUX, Judge.
The defendant was charged with four offenses arising out of the theft of a truck from a Leesville automobile dealership. On January 14, 1992, after trial by a six-person jury defendant was acquitted of one count of theft but convicted of the remaining three counts: simple burglary, a violation of LSA-R.S. 14:62; unauthorized use of a movable valued over one thousand dollars, a violation of LSA-R.S. 14:68; and simple criminal damage to property valued under five hundred dollars, a violation of LSA-R.S. 14:56.
A presentence investigation report was ordered and defendant sentenced on March 20, 1992. For count one, simple burglary, defendant was sentenced to eight (8) years at hard labor. For count two, unauthorized use of a movable, defendant was sentenced to two (2) years at hard labor. For count three, simple criminal damage to property, defendant was sentenced to six (6) months in the parish jail. All three sentences were ordered to run concurrently to each other, but consecutively to another sentence defendant was serving. At the time of the commission of the crimes, defendant was on parole for a prior armed robbery conviction. His parole was automatically revoked as a result of these convictions, and defendant was serving the remaining five (5) years out of the original ten (10) year sentence.
Defendant appeals and assigns as errors: excessive sentence; insufficiency of the evidence; and a request for error patent review. After finding an error patent which exists in the record to be harmless and the defendant's assignments of errors lacking in merit, we affirm the convictions.

FACTS
On July 24, 1991, defendant joined several friends for a night of drinking beer and playing cards. The group met at the home of Judy Brister and her live-in boyfriend, William Myers, which home was directly across the street from the McRae Ford dealership in Leesville, Louisiana. Also present with defendant at the Brister-Myers's home was Mike Tanner, Jason Gallion, and the two year old daughter of Judy Brister and William Myers.
Sometime after 8 p.m., the card game ended and defendant stepped outside. It was disputed whether Mike Tanner may have also gone outside, but the witnesses who testified all agreed that defendant was the only person outside when they heard the sound of glass breaking. Ms. Brister, Mr. Myers and Mr. Tanner went to the screen door and saw defendant crawling from the rear window into the cab of a new Ford truck. Defendant drove the truck into the front yard of the Brister-Myers's home.
Defendant then called out to Mike Tanner to help him hide the truck, but Mr. Tanner refused to get involved and Ms. Brister told defendant to leave. Defendant got out of the truck and used his bandana to wipe the writing, "$1,000 rebate," off of the windshield and then left.
William Myers and Mike Tanner saw defendant the next day. Defendant said he had hidden the truck off of Highway 467.
On July 27, 1991, Boyd Robertson noticed that a truck parked off of Highway 467 had remained there for several days and he stopped to investigate. He saw that the rear window was broken, that some blood was on the broken glass, that cut wires were exposed from the damaged dashboard and there was no tailgate on the truck. The police were notified and so was McRae Ford because its sales sticker was still on the truck's window.
At trial, Mark McRae of McRae Ford testified that defendant did not have consent to take the truck or to enter the truck. The costs to replace the parts stolen amounted to six hundred and ninety dollars ($690.00), the cost to repair and replace the rear window was eighty-nine dollars ($89.00), plus there was an additional cost for the labor to perform the repair of the damage and replacement of the parts.

*182 ERRORS PATENT
Article 464 of the Louisiana Code of Criminal Procedure provides:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
The bill of information charging defendant with simple criminal damage to property of over $500.00 but less than $50,000.00 does not give the statutory citation for the law which defendant is charged with violating. However, the bill of information does state the essential facts of the offense charged, that defendant did "commit simple criminal damage to vehicle belonging to McRae Ford Company with the damage amounting to over $500.00 but under $50,000.00 (A felony)." The defendant did not object to this omission nor did defendant claim surprise or prejudicial lack of notice. Therefore, this error is harmless. State v. Smith, 520 So.2d 1252, 1254 (La.App. 5th Cir.1988), writ denied, 523 So.2d 1320 (La. 1988), citing State v. Sims, 426 So.2d 148, 158 (La.1983).

ASSIGNMENT OF ERROR NO. 1
By his first assignment of error, defendant contends his sentence is excessive.
In regard to defendant's assignment of error, La.C.Cr.P. art. 881.1 provides in full:
A. (1) Within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
(2) The motion shall be oral at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based.
B. If a motion is made or filed under Paragraph A of this Article, the trial court may resentence the defendant despite the pendency of an appeal or the commencement of execution of the sentence.
C. The trial court may deny a motion to reconsider sentence without a contradictory hearing.
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
A motion to reconsider was not filed. The defense counsel merely objected at sentencing and moved for appeal. The defendant is precluded from raising these assignments of error on appeal as he has failed to file a motion to reconsider sentence under the provisions set forth in La.C.Cr.P. art. 881.1. See, State v. Belsha, 608 So.2d 291 (La.App. 3d Cir.1992); State v. Trahan, 607 So.2d 1016 (La.App. 3d Cir.1992).

ASSIGNMENT OF ERROR NO. 2
By his second assignment of error, defendant contends the trial court erred in ordering the sentences imposed on March 30, 1992, to run consecutive to the remaining sentence defendant was serving for a prior armed robbery conviction. As noted previously, defendant had been sentenced to ten (10) years for armed robbery, and was released on parole four (4) months prior to the commission of the present offenses after serving approximately five (5) years out of the original ten (10) year sentence. This parole was automatically revoked upon defendant's conviction of the present offenses.
As with assignment of error number 1, this assignment of error shall not be considered on appeal since defendant failed to file a Motion to Reconsider his sentence after he was sentenced. The motion to reconsider is not limited to the issue of excessive length of a sentence. It includes any ground which concerns the sentence *183 imposed, including the concurrent or consecutive service of multiple sentences.

ASSIGNMENT OF ERROR NO. 3
Defendant contends the evidence was insufficient to convict him. In his appellate brief, defendant's argument is one sentence:
"ARGUMENT TO ASSIGNMENT OF ERROR NUMBER THREE
The State of Louisiana did not produce sufficient evidence to prove beyond a reasonable doubt each element of the crimes for which he was charged necessary to constitute the defendant's guilt. R.S. 15:271."
The state argues in its brief that defendant has not briefed this assignment of error, and it submits that it is abandoned.
The requirements for an appellant's brief is set forth by Uniform Rules Courts of Appeal Rule 2-12.4, which provides in pertinent part:
2-12.4 Appellant's Brief. The brief of the appellant or relator shall set forth the jurisdiction of the court, a succinct syllabus or statement of the principles of law relied upon with corresponding citations of authority, a concise statement of the case, the action of the trial court thereon, a specification or assignment of alleged errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case, free from unnecessary repetition, giving accurate citations of the pages of the record and the authorities cited, and a short conclusion stating the precise relief sought.
The argument on a specification or assignment of error in a brief shall include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error. The court may disregard the argument on that error in the event suitable reference to the record is not made.
All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed....
Failure to argue in an appellant's brief an assignment of error constitutes a waiver of that error. State v. Lewis, 576 So.2d 1106, 1110 (La.App. 3d Cir.1991), writ denied, 580 So.2d 669 (La.1991). As noted in Lewis, where a defendant has raised no legal argument in support of his allegation, that allegation raised by assignment of error is deemed abandoned on appeal. Id.
Although we have some doubts concerning the sufficiency of compliance with Rule 2-12.4 of the Uniform Rules, we shall nevertheless review the issue of sufficiency of the evidence in fairness to the defendant.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See, State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. LSA-R.S. 15:271.
Simple criminal damage to property is defined by LSA-R.S. 14:56 as the intentional damaging of any property of another, without the consent of the owner, by means other than fire or explosion. The value of the property damaged will determine the range of possible sentences.
*184 In the present case, the state introduced evidence that after defendant had stepped outside of the Brister-Myers's house across the street from McRae Ford, the occupants heard the sound of glass breaking, immediately went to look out the screen door, and saw defendant crawling through the broken rear window into the cab of a truck. Defendant then started the truck, drove it into the front yard, and asked Mike Tanner to help him hide the truck. After Mike Tanner refused to help defendant, defendant wiped the "$1,000 Rebate" markings off of the windshield of the truck and then left.
There was no evidence presented that the glass broke as a result of an accident, or fire or explosion. The defendant's actions immediately after the witnesses heard the sound of glass breaking established that defendant acted intentionally when he broke the truck window. Mark McRae testified that defendant did not have the consent of the owner of the truck, McRae Ford, to break the window which was valued under $500.00. Therefore, the evidence was sufficient to convince any rational trier of fact beyond a reasonable doubt that defendant committed simple criminal damage to property valued under $500.00.
Simple burglary is defined by LSA-R.S. 14:62 as the unauthorized entering of any vehicle with the intent to commit a felony or any theft therein. When defendant crawled into the cab of the truck with the intent to commit a theft of the truck or any of its parts, or with the intent to commit a felony, such as unauthorized use of a movable, he was committing simple burglary. As noted previously, defendant did not have the authority or consent of the owner of the truck to enter or use the truck. The fact that defendant immediately started the truck and drove it off the McRae Ford lot, asking another person to help him hide the truck, establishes defendant entered the truck with the intent to commit a theft or other felony. Therefore, the evidence was sufficient to sustain defendant's conviction of simple burglary of the Ford truck.
Unauthorized use of a movable is defined by LSA-R.S. 14:68 as the intentional taking or use of a movable which belongs to another, without the owner's consent, but without any intention to permanently deprive the other of the movable. The value of the movable determines the range of possible sentences.
When defendant drove the Ford truck out of the lot of the McRae Ford dealership and then abandoned the truck off of Highway 467, the defendant committed unauthorized use of a movable. Defendant did not have the consent of McRae Ford to take or use the truck. Obviously defendant acted intentionally when, after he broke into the truck, he asked another person to help him hide it, and later admitted to Mike Tanner he had hidden the truck off of Highway 467. Although Mark McRae did not testify about the value of the truck, state's exhibit number 3, the vehicle invoice price list, was admitted into evidence, shown to the jury and gave the value of the truck as over $12,000.00. Therefore, the state presented sufficient evidence to convince any rational trier of fact that defendant committed unauthorized use of a movable valued over $1,000.00.
Defendant's primary attack upon the state's case focuses on the credibility of the eyewitnesses. Both Mike Tanner and William Myers had prior convictions: Mike Tanner was on parole for a federal conviction for aiding and abetting in a bank robbery, and William Myers had been convicted for shoplifting. Defendant contended that Mike Tanner participated with him in stealing the truck, with the knowledge of Mr. Myers and Ms. Brister. In August of 1991, several weeks after the theft, defendant got into a fight with Mr. Tanner and Mr. Myers who claimed defendant was bothering Ms. Brister. Shortly after this fight, during the first week of September, the police received an anonymous tip that Mr. Tanner, Mr. Myers and Ms. Brister had knowledge of who stole the truck, and they all implicated defendant. All three witnesses admitted they did not report the theft of the truck because they did not want to get involved. The jury heard all of this testimony and was aware of defendant's *185 theory of defense, and still chose to convict defendant.
This assignment has no merit. The evidence was sufficient to support the convictions.
For the foregoing reasons, the defendant's convictions are affirmed.
AFFIRMED.